IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL BALDONI,

                Plaintiff,                                       CV No. 03-1381-AS

        v.                                            OPINION
AND ORDER

UNUMPROVIDENT, ILLINOIS TOOL WORKS,
INC., AND GAYLORD INDUSTRIES, INC.,

                Defendants.

_____

ASHMANSKAS, Magistrate Judge:

      Plaintiff brought this action pursuant to ERISA, asserting that his claim for long term

disability benefits was wrongfully denied.  Judgment was previously entered in defendants' favor

on the parties' cross-motions for summary judgment.  The Ninth Circuit reversed the grant of

summary judgment and remanded the case for further proceedings in light of <u>Abatie v. Alta Health</u>

<u>& Life Ins. Co.</u>, 458 F.3d 955 (2006) (*en banc*).  In response to plaintiff's assertion that <u>Abatie</u>

entitles him to additional discovery, defendants have moved for a protective order (No. 59), which

is currently before the court.  For the reasons that follow, defendants' motion is GRANTED IN

1 - OPINION AND ORDER

PART AND DENIED IN PART.

## PROCEDURAL BACKGROUND

On the parties' prior cross-motions for summary judgment, considering only the administrative record and reviewing for abuse of discretion, this court issued findings and a recommendation that judgment be entered in defendants' favor. Judge King agreed and entered a judgment dismissing plaintiff's claim.

On remand, in light of Abatie, this court will have to determine to what extent, if any, UNUMProvident's inherent conflict of interest as the plan's administrator and payor, affected its exercise of discretion in denying plaintiff's claim. As a threshold matter, however, the parties presently disagree about whether Abatie entitles plaintiff to discovery on that issue.

As relevant to the issues discussed below, there is no dispute that: (1) the ERISA benefit plan at issue confers discretion upon UNUMProvident to interpret the plan's terms and make benefit determinations; and (2) in addition to administering the plan, UNUMProvident also funds the payment of benefits under the plan.

## THE STANDARD OF REVIEW UNDER *ABATIE*

The general guidelines for reviewing an administrator's decision to deny benefits under an ERISA plan were set forth by the Supreme Court in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989). In general, the court reviews the administrator's decision *de novo*, unless the plan, as a matter of contractual agreement, confers discretion on the administrator to construe its terms and determine eligibility. In those circumstances, the court reviews the administrator's decision for an abuse of that discretion. Id. at 115. That standard applies whenever the plan document confers discretion, regardless of whether the administrator is operating under a conflict of interest. Abatie,

2 - OPINION AND ORDER

458 F.3d at 965, citing Firestone, 489 U.S. at 115.  To the extent Ninth Circuit precedent had strayed from these guidelines, it was overruled by Abatie.  See 458 F.3d at 966.

Specifically, Atwood v. Newmont Gold Co., 45 F.3d 1317 (9th Cir. 1995), had set forth a burden-shifting approach that provided for *de novo* review under certain circumstances even though the plan document conferred discretion on the administrator.  Like the present case, the plan administrator in Atwood was also the funding source for benefits.  Id. at 1322.  Such an administrator has an incentive to deny claims because money that is not paid out as benefits is retained by the administrator, potentially promoting its own profit.  See Abatie, 458 F.3d at 966 (citing Doe v. Group Hosp. & Med. Servs., 3 F.3d 80, 86 (4th Cir. 1993)).  As characterized by the Ninth Circuit, that dual role results in a "structural conflict of interest" on the part of the administrator.  See Abatie, 458 F.3d at 965 (citing Tremaine v. Bell Indus., Inc., 196 F.3d 970, 976 (9th Cir. 1999). When there is a structural conflict of interest, Atwood held that the administrator's decision should be renewed *de novo*, regardless of the discretion conferred by the plan document, if: (1) the plaintiff could produce material probative evidence that the conflict of interest effected the decision to deny benefits; and (2) the administrator could not rebut that evidence.  See Abatie, 458 F.3d at 966 (describing the Atwood test).

In Abatie, the Ninth Circuit, sitting *en banc*, renounced Atwood's burden-shifting approach because "the Supreme Court indicated in Firestone [that] such an inherent conflict of interest, even if merely formal and unaccompanied by indicia of bad faith or self-dealing, ought to have some effect on judicial review."  458 F.3d at 966.  As such, the burden plaintiff had to meet under Atwood before the court would consider the administrator's structural conflict of interest was unreasonable. Id.  Moreover, *de novo* review was not appropriate when the plan conferred discretion on the

3 - OPINION AND ORDER

administrator. <u>Id.</u>  To alleviate those misinterpretations, <u>Abatie</u> held that:

> "<u>Firestone</u> [requires] abuse of discretion review whenever an ERISA plan grants discretion to the plan administrator, but a review informed by the nature, extent and effect on the decision-making process of any conflict of interest that may appear in the record.  This standard applies to the kind of inherent conflict that exists when a plan administrator both administers the plan and funds it, as well as to other forms of conflict."

458 F.3d at 967.

After clarifying the standard of review, <u>Abatie</u> addressed two ensuing issues: (1) what evidence is relevant to show whether a structural conflict of interest tainted the decision to deny benefits; and (2) how such evidence should affect the court's abuse of discretion review.  In general, when a court reviews for an abuse of discretion, the scope is limited to the information the administrator had when making the decision, *i.e.*, "the administrative record."  <u>Bendixen v. Standard Ins. Co.</u>, 185 F.3d 929, 944 (9th Cir. 1999).  <u>Abatie</u> explained how that general rule applies in cases where the plan document confers discretion on a conflicted administrator:

> "The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established by extrinsic evidence or otherwise."

458 F.3d at 970.

Thus, in reviewing for abuse of discretion, the court may consider evidence, including extrinsic evidence, regarding the administrator's conflict of interest to "mak[e] something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage under a particular plan and a particular set of medical and other records."  <u>Id.</u> at 969.  This determination must be made on a case-by-case basis, in which the reviewing court decides how much or how little to credit the plan administrator's reason for denying coverage, in light of all the

relevant facts and circumstances.  Id. at 968.  The Abatie court expressly refused to adopt the sliding scale approach to abuse of discretion review that is used in other circuits, explaining:

> "An egregious conflict may weigh more heavily (that is may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might.  But in any given case, all the facts and circumstances must be considered and nothing 'slides,' so we find the metaphor unnecessary and potentially confusing."

Id.  The court gave examples of the relevant "facts and circumstances," i.e., the evidence, extrinsic or otherwise, that may be considered in determining how the court will scrutinize the administrator's exercise of discretion:

> "The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history.  A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for the denial, Lang [v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc., 125 F.3d 794, 799 (9th Cir. 1997)]; fails adequately to investigate a claim or ask the plaintiff for necessary evidence, Booten v. Lockheed Med. Benefit Plan, 110 F.3d 1461, 1463-64 (9th Cir. 1997); fails to credit a claimant's reliable evidence, Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L. Ed. 2d 1034 (2003); or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record."

Id. at 968-69.  This passage from Abatie is at the root of the present dispute.

## FACTUAL BACKGROUND

Plaintiff relies predominantly on the excerpt quoted above to support his argument that he is entitled to discovery of any information that falls into the listed categories of evidence, in particular, evidence relevant to whether UNUMProvident has a "parsimonious claims-granting history" or "has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record."

Consistent with that position, plaintiff served discovery requests on defendants, but only

5 - OPINION AND ORDER

three of them are before the court, as they were quoted in defendants' motion:

> "Please answer the following Interrogatory (No. 2): Does UNUMProvident keep data regarding its claims granting history for the period from 1996 through 2006? If so, for this time period (1996-2006) please indicate nationwide (a) the number of disability claims submitted to UNUMProvident seeking disability benefits, (b) the number of disability claims accepted with benefits actually paid to the claimant, (c) the number of disability claims denied by UNUMProvident, and (d) the number of disability claims UNUMProvident determined to be no longer eligible to receive benefits.

> "Please answer the following interrogatory (No. 4): Please indicate the number of individuals, including those insured through group plans, which UNUMProvident insured for each year from 1996 through 2006. For each year please indicate in dollar amounts the total amount of revenue UNUMProvident received in disability premium payments. For each year please indicate in dollar amounts the total disability benefits UNUMProvident paid out.

> "Please identify by name, jurisdiction and legal citation, each lawsuit filed against UNUMProvident contesting the denial of disability benefits or the discontinuation of disability benefits for the years 2000, 2001, 2002, 2003, 2004, 2005 and 2006."

Memorandum in Support of Motion for Protective Order (docket No. 59), p. 2.[1]

In the wake of Abatie, it is clear that plaintiff no longer bears the burden to produce a "smoking gun" before the court will consider whether a structural conflict of interest tainted the administrator's exercise of discretion. See Abatie, 458 F.3d at 969. The question presented is whether, and to what extent, plaintiff is entitled to discovery regarding that issue.

Plaintiff asserts that, in the absence of the burden formerly imposed on plaintiffs by Atwood,

---

[1] For purposes of authentication, defendants' memorandum cites "plaintiff's letter motion to compel discovery dated December 4, 2006." The referenced document is not before the court, as it was never filed and is not a part of the official court record. To the extent the referenced document could be construed to be seeking an order, the court considered plaintiff to have abandoned that request in light of the subsequent telephone status conference, which is reflected in the minutes of proceeding dated December 5, 2006 (docket No. 58). Because plaintiff has not contested the authenticity of the interrogatories as represented in defendants' memorandum, the court will take them as accurate.

6 - OPINION AND ORDER

he is entitled to any discovery that might lead to evidence that UNUMProvident's structural conflict of interest affected the denial of his claim.  Defendants' response is premised on their contention that the sole purpose of discovery in pre-<u>Abatie</u> ERISA cases was to allow plaintiffs to pursue their evidentiary burden under <u>Atwood</u>.  In conjunction with overruling <u>Atwood</u>, <u>Abatie</u> provides that the reviewing court may consider the effect on the administrator's decision in *every* case where there is a structural conflict of interest.  Since the plaintiff no longer bears a burden to trigger the court's consideration of the administrator's conflict, defendants maintain that <u>Abatie</u> renders discovery unnecessary.  Thus, in complete contrast to plaintiff's position that <u>Abatie</u> did away with discovery restrictions, defendants maintain that <u>Abatie</u> did away with discovery—to the limited extent it was ever allowed—in ERISA cases

LEGAL STANDARDS: DISCOVERY UNDER ERISA

<u>Abatie</u> does not explicitly address the issue, which in and of itself informs the court's analysis.  <u>Abatie</u> provides examples of the types of evidence that are *admissible* to show that a conflicted administrator's exercise of discretion should be viewed with more or less skepticism.  <u>See</u> 458 F.3d at 968-69.  The extrinsic evidence at issue in <u>Abatie</u>—a declaration from the treating physician—was in the plaintiff's possession.  <u>Id.</u> at 961.  As such, there was no discovery issue before the court and no need to address whether the clarification of the standard of review had any particular effect on when discovery should be allowed in ERISA cases.  Nonetheless, there are inferences that may reasonably be drawn from <u>Abatie</u>, in the context of ERISA common law.

Prior to <u>Abatie</u>, limited discovery was provided to allow plaintiffs to meet their burden under <u>Atwood</u> to produce "material probative evidence" that a denial of benefits was motivated by an administrator's conflict of interest.  <u>Id.</u> at 970 (citing <u>Tremaine v. Bell Indus., Inc.</u>, 196 F.3d 970,

7 - OPINION AND ORDER

976-77 (9th Cir. 1999); <u>Kosiba v. Merck & Co.</u>, 384 F.3d 58, 67 n. 5 (3rd Cir. 2004), <u>cert. denied</u>, 544 U.S. 1044 (2005)).  <u>Abatie</u> recognized that allowing the reviewing court to consider extrinsic evidence of the administrator's conflict was not a new development in ERISA common law.

The rational for allowing limited discovery in ERISA cases was expressed in the pre-<u>Abatie</u> case <u>Klund v. High Technology Solutions, Inc.</u>, 417 F. Supp. 2d 1155, 1160 (S.D. Ca. 2005): If discovery was never allowed regarding an administrator's conflict, ERISA plaintiffs would have a right without a remedy.  In other words, if an ERISA plaintiff is entitled to offer conflict of interest evidence as relevant to the standard of review, discovery should be available in appropriate circumstances as a means for ERISA plaintiffs to obtain such evidence.

Although there were circumstances under <u>Atwood</u> in which a plaintiff was entitled to conflict of interest discovery, Judge Jelderks artfully expressed the problems that would arise if those circumstances were not limited:

> "Permitting such extensive discovery would exponentially increase both the complexity and the cost of ERISA litigation. Moreover, there almost always would be a disputed issue of material fact to try, namely whether the fiduciary's decision was tainted by the conflict of interest. The parties could spend days or even weeks putting on witnesses to testify solely as to the motives of the decision maker. That inquiry would overshadow the principal issue in the litigation-whether the claimant was entitled to benefits. The sums expended on attorney fees to conduct extensive discovery, litigate discovery disputes, and try the action easily could exceed the amount in dispute. This vision of the future of ERISA litigation belies the Ninth Circuit's admonition that a primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.

<u>Palmer</u>, 973 F. Supp. at 1188 (internal quotation marks and citation omitted).

This district has balanced these opposing considerations—the plaintiff's need and the underlying purpose of ERISA—by requiring plaintiffs to make a threshold showing before discovery will be allowed.

8 - OPINION AND ORDER

In general, whether to allow discovery has been evaluated on a case-by-case basis, considering the probative value the discovery would have on whether a conflict of interest exists and, if so, its specific effect on the benefits decision at issue.  Discovery has generally not been allowed because the need for discovery in the specific cases where it has been sought did not outweigh the underlying purpose of ERISA, which counsels against discovery.  See, e.g., Dames v. The Paul Revere Life Ins. Co., 49 F. Supp. 2d 1194, 1203 (D. Or. 1994) (plaintiff did not make threshold showing that decision was tainted, which would have entitled her to limited discovery to flesh out the effect of structural conflict of interest); Palmer v. University Medical Group, 973 F. Supp 1179, n. 9, 1190 (D. Or. 1997) (plaintiff denied discovery, though it might be appropriate when the conflict alleged is of a type that would not be evident on the face of the record).

<u>DISCUSSION</u>

Defendants argue, based on the premises that: (1) discovery was previously provided in limited circumstances *solely* so that plaintiffs could pursue their burden under <u>Atwood</u>; and (2) <u>Abatie</u> did away with that burden, it necessarily follows that discovery is no longer needed—and therefore not allowed—in ERISA cases.  Defendants' position is supported, they assert, by the <u>Abatie</u> court's citation of cases in which the conflict of interest evidence was either intrinsic (458 F.3d at 968, citing <u>Lang</u>, <u>Booton</u> and <u>Nord</u>)[2] or obtained through means other than discovery (458 F.3d at 970, citing <u>Tremaine</u>).  Consequently, defendants argue, it is reasonable to infer that the <u>Abatie</u> court intended discovery to be no longer available as a means for ERISA plaintiffs to obtain evidence relevant to an administrator's conflict of interest.

That inference, however, does not seem reasonable.  If anything, it would be more reasonable

---

[2]  See quoted passage from <u>Abatie</u>, *supra*, p. 5.

to conclude that <u>Abatie</u> does not disturb the status quo, in which limited conflict of interest discovery may be allowed in certain circumstances.  That conclusion is consistent with the one discovery request the Ninth Circuit has considered to date in the wake of <u>Abatie</u>.  In <u>Shorter v. Metropolitan Life Ins. Co.</u>, another case in which the administrator had an inherent conflict, the plaintiff's desire for additional discovery was not a sufficient reason to remand the case, because the discovery sought pertained to the decision on the merits, not the structural conflict of interest.  2007 WL 34816 n. 1 (9th Cir. 2007).  If the panel had understood <u>Abatie</u> to render discovery unnecessary in cases where there is structural conflict of interest, it would likely have said so, rather than citing the desired discovery's lack of relevancy.

In addition, one of the reasons cited in <u>Abatie</u> for renouncing <u>Atwood</u>'s burden-shifting approach was because it "places on plan participants the burden of producing evidence of the plan administrator's motives, *evidence that an ERISA plan participant is much less likely to possess than is the administrator*."  <u>Abatie</u>, 458 F.3d at 967 (emphasis supplied).  Noting that the administrator is the party most likely to possess evidence of its own motives implies that the <u>Abatie</u> court contemplated that there would continue to be circumstances in which an ERISA plaintiff should be allowed conflict of interest discovery.

Furthermore, this court disagrees with defendants' premise that discovery would serve no purpose now that a reviewing court may always take into consideration a structural conflict of interest's effect on the administrator's exercise of discretion.  Not only should the reviewing court consider the fact that a structural conflict of interest exists, it may also consider the nature, scope and extent to which the conflict affected the specific benefit decision at issue.  458 F.3d at 970.  Because a plaintiff may now argue that a conflicted administrator's exercise of discretion should be

10 - OPINION AND ORDER

viewed with a high (as opposed to a low) level of skepticism, it is reasonable to infer that discovery continues to be a means for plaintiffs to obtain evidence relevant to the standard of review, in appropriate circumstances.  See id., at 968 (describing how different types of evidence might effect the level of skepticism with which the court views a conflicted administrator's decision).

        For the reasons discussed above, the rationale for allowing discovery in certain ERISA cases remains persuasive in the wake of Abatie.  However, the rationale for constraining discovery in ERISA cases remains equally in force.  Although Abatie cleared the way for a court to consider the effect of a structural conflict of interest, that issue should not be allowed to eclipse the decision on the merits and undermine ERISA's goal to provide inexpensive and expeditious review of benefit decisions.  Abatie makes clear that the effect of a conflict on an administrator's decision needs to be examined on a case-by-case basis in light of specific facts and circumstances.  See 458 F.3d at 968.  In light of ERISA's purpose, conflict of interest discovery should not be unlimited.  The specific circumstances of each case should determine whether discovery is appropriate, just as it was before Abatie.

        The requirement of a case-by-case approach undermines plaintiff's assertion that he is entitled to discovery of the type sought in the interrogatories before the court (see p. 6, *supra*).  In his written and oral arguments, plaintiff stressed that evidence of a parsimonious claims-granting history in the public realm entitles him to broad discovery of similar evidence in UNUMProvident's possession.  See Plaintiff's Response to Defendants' Motion for Protective Order (docket No. 63), p. 7.  At oral argument, plaintiff took the position that whenever UNUMProvident is a defendant in an ERISA case, the plaintiff should be entitled to the same extensive discovery regarding the handling of other claims that he seeks in the above-referenced interrogatories.  That, however, would

not be consistent with <u>Abatie</u>'s instruction that the effect of a conflict be assessed on a case-by-case basis. Just as the effect of a conflict must be assessed on a case-by-case basis, so should the need for discovery on that issue, which is consistent with this district's prior practice.

Thus, <u>Abatie</u> does not disturb this district's practice to limit conflict of interest discovery and determine whether to allow it on a case-by-case basis. In light of ERISA's underlying purpose, in cases such as this, when the administrator has an inherent conflict of interest, discovery should only be allowed when narrowly tailored to significantly illuminate the conflict's effect on the specific benefit decision under review.

The fact that plaintiff has already obtained evidence from the public realm regarding UNUMProvident's claims-handling history undermines his assertion that discovery of such evidence is appropriate in this case. Plaintiff is welcome to use the evidence already in his possession to argue that UNUMProvident has a parsimonious claims-granting history, which should increase the court's skepticism toward its stated reasons for denying his claim. Plaintiff has not, however, demonstrated a sufficient need, under the facts and circumstances of this case, for discovery of additional claims-handling information.

To the extent plaintiff seeks discovery of UNUMProvident's handling of other claims, it is not narrowly tailored to show how the specific decision at issue is consistent with the handling of other claims, except to the extent other claims were also denied or disputed. In other words, the discovery sought is neither sufficiently probative nor specifically relevant to the only issue that could merit discovery—whether UNUMProvident's structural conflict of interest *affected its exercise of discretion in making the particular decision to deny plaintiff's claim*. That is not to say that the handling of other claims will never be specifically relevant to the effect of a conflict of interest on

a contested claim.  In this case, however, the discovery sought would not inform the issue sufficiently to outweigh ERISA's underlying purpose to provide an inexpensive and efficient means to review contested benefit decisions.

Nonetheless, the court will not grant defendants' motion for a protective order prohibiting all discovery, because the court rejects defendants' argument that <u>Abatie</u> obviated the need for discovery in all cases when the administrator has a structural conflict of interest.  However, the court will grant the motion to the extent it seeks protection from the specific discovery requests before the court, *i.e.*, the interrogatories quoted at p. 6, *supra*.  These requests seek broad, generalized information regarding UNUMProvident's handling of other claims and disputes, as well as its general financial performance over an extended period of time.  The information sought is not tailored to show the effect of the structural conflict of interest *on the specific decision at issue* with any more precision than the information already in plaintiff's possession or in the public realm.

<u>CONCLUSION</u>

For these reasons, defendants' Motion for a Protective Order (No. 59) is GRANTED IN PART AND DENIED IN PART.  It is denied in so far as the court will not issue an order that <u>Abatie</u> prohibits discovery under any circumstances when the administrator has a structural conflict of interest.  The motion is granted in so far as the court will not require defendants to respond to the three interrogatories that are before the court.

DATED this 26th day of February, 2007.

    /s/Donald C. Ashmanskas    
DONALD C. ASHMANSKAS
United States Magistrate Judge

13 - OPINION AND ORDER