IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MICHAEL BALDONI, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNUMPROVIDENT, ILLINOIS TOOL )<br>WORKS, and GAYLORD INDUSTRIES,)<br>INC., )<br>)<br>Defendants. )<br>─────────────────────────) | Civil No. 03-1381-AS<br><br>FINDINGS AND RECOMMENDATION |

ASHMANSKAS, Magistrate Judge:

Michael Baldoni filed an Amended Complaint pursuant to the
Employee Retirement Income Security Act of 1974, 29 U.S.C. §§
1001-1461 (ERISA) against three defendants, UNUMProvident,
Illinois Tool Works and Gaylord Industries, alleging wrongful
denial of long term disability (LTD) benefits.  Baldoni seeks to
recover LTD insurance benefits beginning February 7, 2001, the
date of disability, until he reaches the age of 65; Baldoni also
seeks his costs and attorney fees pursuant to 29 U.S.C. §

1 - FINDINGS AND RECOMMENDATION                          [LB]

1132(g)(1) and 1132(f). UNUMProvident (UNUM) is the LTD plan administrator; Gaylord Industries is the LTD plan sponsor; and Illinois Tool Works[1] is a wholly owned subsidiary of Gaylord Industries and Baldoni's former employer.

Judgment was previously entered in defendants' favor on the parties' cross-motions for summary judgment. <u>See</u> <u>Baldoni v. UNUMProvident</u>, 2004 WL 2260599 (D.Or. 2004)(Findings and Recommendation adopted by Order dated November 3, 2004). The Ninth Circuit vacated the grant of summary judgment and remanded the case for further proceedings in light of <u>Abatie v. Alta Health & Life Ins. Co.</u>, 458 F.3d 955 (2006)(*en banc*). <u>See</u> <u>Baldoni v. UNUMProvident</u>, 200 Fed.Appx. 724 (9th Cir. 2006).

Once again, the parties have filed cross-motions for summary judgment. Oral argument was heard on the cross-motions and, for the reasons that follow, Baldoni's Cross-Motion for Summary Judgment should be denied; and UNUM's Cross-Motion for Summary Judgment should be granted.

## FACTUAL BACKGROUND

Baldoni was employed by Illinois Tool Works as an NC programmer, which required that he program machines -- a turret lathe and a laser lathe. According to Baldoni, his job duties

---

[1]        On November 3, 2004, Gaylord Industries and Illinois Tool Works were dismissed on the ground that they were not proper defendants in this action for ERISA benefits. Baldoni's action proceeds solely against UNUM, the plan administrator.

also included exertional activities such as gathering scrap pieces and non-exertional requirements of alertness, concentration and acting with precision.  UNUM points out that Baldoni elected to gather scrap pieces and it is not part of his job description.

On August 29, 2001, Baldoni submitted a claim to UNUM seeking LTD benefits, asserting that his emphysema and hepatitis prevented him from performing his job.  Baldoni explained that he was very short of breath, had dizzy spells and a constant cough, as well as fatigue and depression.  Baldoni's employer confirmed that his last day at work was February 6, 2001.

Baldoni's treating physician, Dr. Frank Rosenbloom, submitted an Attending Physician Statement in which he diagnosed Baldoni with cardiomyopathy and noted objective findings of dyspnea (shortness of breath), hypertension, and tachycardia.  He opined that Baldoni was "unable to perform physical work" and that it was "unknown" when Baldoni could return to work.

Medical records UNUM received from Dr. Rosenbloom reflected that he had first seen Baldoni in March 2000, for hypertension. Dr. Rosenbloom noted that Baldoni had multiple medical conditions (including aortic and mitral valve replacements, bacterial endocarditis and hypertension) and commented that Baldoni had a "history of noncompliance with physician recommendations."

Dr. Rosenbloom's chart notes for February 6, 2001, reflect that Baldoni had reported that he believed he had suffered a transient ischemic attack the previous week and was experiencing numbness in his face.  Dr. Rosenbloom also indicated that Baldoni had reported that he was under a lot of stress at work because his employer was thinking of replacing him and was requiring him to go through more education.  In his chart notes for that day, Dr. Rosenbloom diagnosed transient ischemic attack, chest pain and dyspnea.  Dr. Rosenbloom further noted that he had agreed to write a letter authorizing Baldoni to take some time off work.

Dr. Rosenbloom referred Baldoni to a cardiologist, Louise Kremkau, who saw Baldoni on May 15, 2001.  Dr. Kremkau provided Baldoni with a heart monitor to assist in detecting evidence of a possible arrhythmia.  She also recommended that he undergo several blood studies and tests.

Dr. Kremkau' s medical records reveal that she saw Baldoni again on June 13, 2001, to review the recordings made by Baldwin's heart monitor.  She noted that the heart monitor showed one six-beat burst of SAT, but otherwise was in sinus rhythm and no bardycardia or important tachycardia was noted.  In her chart notes for that day, Dr. Kremkau noted that Baldoni's blood work was normal except for a high glucose level and an abnormal alkaline phosphates, AST and ALT; that his CBC showed normal values and a SED rate of 4; and that his ejection fraction was

normal at 65%.  Dr. Kremkau noted that she had planned to perform
a treadmill test, but Baldwin declined.

Dr. Charles Belville, a psychiatrist, submitted to UNUM a
one-page chart summary in lieu of medical records in which he
indicated that he began seeing Baldwin in June 2000, for anxiety
and depression.  Dr. Bellville stated that while initially the
major reason for Baldoni's disability seemed clearly related to
his breathing problems, as time passed his depression has "loomed
as a greater and greater factor."

UNUM denied Baldoni's claim for LTD benefits by letter dated
October 31, 2001.  UNUM agreed that the pulmonary function tests
demonstrated that Baldwin had moderate to severe chronic
obstructive pulmonary disease (COPD), but noted
that all other pulmonary and cardiac testing showed normal
results.  UNUM therefore concluded that there was no substantial
evidence in the file to support restrictions and limitations that
would preclude Baldwin from returning to work as a programmer.

Baldwin disputes UNUM's contention that he was not precluded
from returning to work and UNUM's characterization of the October
31, 2001, denial letter omits salient facts.  For example that
letter stated that Baldwin experienced "significant air trapping
and moderate decreased diffusion capacity" caused by the COPD.
In addition, UNUM's denial letter stated that Dr. Rosenbloom had
documented his restrictions and limitations, in part, "as dyspnea

with any exertion and unable to perform physical work. . . ."
Finally, the letter also stated that documentation from
"Psychiatrist, Dr. Bellville, shows you went out on disability
due to breathing problems; however your depression has loomed as
a greater and greater factor."

Baldwin appealed the denial decision by letter dated January
11, 2002.  He advised that he had a pulmonary function test
scheduled for January 21, 2002, and asked that UNUM refrain from
making a final decision on his claim until after the results of
that test.  By letter dated January 29, 2002, UNUM agreed.

By letter dated July 16, 2002, UNUM advised Baldwin that it
still had not received the results of the pulmonary function
test, and informed him that his claim was being referred to
UNUM's Quality Review department for further review.

By letter dated August 27, 2002, UNUM upheld its decision
to deny Baldwin's claim, asserting that the clinical data
contained in the file did not support or specify any restrictions
or limitations that would prevent Baldwin from performing his
occupation at the time he last worked.

The Long-term Disability Plan (Policy) contains the
following definition of disability:

"Disability" and "disabled" mean that because of injury or
sickness:

1.    the insured cannot perform each of the material
      duties of his regular occupation; and

6 – FINDINGS AND RECOMMENDATION                              [LB]

2.    after benefits have been paid for 24 months, the
insured cannot perform each of the material duties of
any gainful occupation for which he is reasonably
fitted, taking into consideration training, education
or experience, as well as prior earnings.

## LEGAL STANDARD

The Ninth Circuit has explained that where an ERISA plan
grants discretion to a plan administrator, courts review the
plan's decisions for abuse of discretion, but that such review is
"informed by the nature, extent, and effect on the decision-
making process of any conflict of interest that may appear in the
record." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955,
967 (9th Cir. 2006)(en banc)(overruling Atwood v. Newmont Gold
Co., 45 F.3d 1317, 1323 (9th Cir. 1995)(requiring a plan
participant to present "material, probative evidence, beyond the
mere fact of the apparent conflict, tending to show that the
fiduciary's self-interest caused a breach of the administrator's
fiduciary obligations to the beneficiary")); see also Firestone
Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Pursuant
to the ruling in Abatie, "plaintiffs will have the benefit of an
abuse of discretion review that always considers the inherent
conflict when a plan administrator is also the fiduciary."  Id.
at 969. Under the standard set forth in Abatie:

The level of skepticism with which a court reviews a
conflicted administrator's decision may be low if a
structural conflict of interest is unaccompanied, for
example, by any evidence of malice, of self-dealing, or of a
parsimonious claims-granting history.  A court may weigh a
conflict more heavily if, for example, the administrator

> provides inconsistent reasons for denial, fails adequately
> to investigate a claim or ask the plaintiff for necessary
> evidence, fails to credit a claimant's reliable evidence, or
> has repeatedly denied benefits to deserving participants by
> interpreting plan terms incorrectly or by making decisions
> against the weight of the evidence in the record.

Id. at 968-969 (internal citations and quotations omitted).

"What the district court is doing in an ERISA benefits denial

case is making something akin to a credibility determination

about the insurance company's or plan administrator's reason for

denying coverage under a particular plan and a particular set of

medical and other records." Id.

**DISCUSSION**

**I.   Cross-Motions for Summary Judgment**

Baldoni asserts that UNUM abused its discretion when it

denied his application for LTD benefits.  Specifically, Baldoni

assigns error to UNUM's decision as follows: (1) UNUM had a

structural conflict of interest as defined by the Ninth Circuit

in Abatie; (2) UNUM has a history of systemic self-dealing and

parsimonious claims granting; (3) UNUM's denial of Baldoni's

application for LTD benefits was not made in good faith; (4) UNUM

failed to have appropriate medical experts review the medical

evidence in the record; (5) UNUM failed to seek additional

information to aide in the understanding of Baldoni's

impairments; (6) UNUM failed to advise Baldoni of additional

information required to perfect his claim; and (7) UNUM

impermissibly added requirements to the Policy.

### A.    UNUM's Conflict of Interest/Claims History

As a preliminary matter, Baldoni concedes that the court's review under the terms of the applicable UNUM Policy is for abuse of discretion within the meaning of and pursuant to the Ninth Circuit's decision in <u>Abatie</u>.  Nevertheless, Baldoni contends that a "structural" conflict of interest exists because UNUM both accepted premiums to insure the risk and made decisions regarding his LTD claim.  Moreover, according to Baldoni, that structural conflict influenced the decision with respect to his LTD benefits claim.  As such, a less deferential review is mandated by the Ninth Circuit's decision in <u>Abatie</u>.

This court will evaluate UNUM's denial of Baldoni's claim under the standard set forth in <u>Abatie</u>, taking into account the extent, nature and effect of the inherent structural conflict of interest created by UNUM's dual role as payer of benefits under the plan and decision maker regarding eligibility for plan benefits as one factor in determining whether UNUM abused its discretion.  Further, pursuant to <u>Abatie</u>, the court will consider evidence outside the administrative record to the extent such evidence is relevant and is otherwise admissible under the rules of evidence.  See <u>Abatie</u>, 458 F.3d at 970.

Baldoni asserts that "Court Rulings And Extrinsic Evidence Show That UNUM Has Engaged In A Parsimonious Claims Granting History, And Self-Dealing On A Systemic Basis."  Baldoni sets

forth a lengthy history to support his challenge to UNUM's claims
practices as "unreasonable, bad faith, deceptive, and unlawful."
The evidence includes federal district and appellate court
decisions critical of UNUM's claims practices as affected by bias
or misconduct; the Multistate Exam Settlement Agreements
(Regulator Settlement Agreement or RSA); and the California
Market Conduct Investigation.

Alternatively, UNUM responds that Baldoni's generalized
conflict of interest arguments do not undermine its credibility
concerning the processing of Baldoni's claim.  Specifically,
court rulings criticizing UNUM's practices are counterbalanced by
numerous decisions favorable to UNUM.  Moreover, neither the RSA
nor the California Market Conduct Examination provide probative
evidence of wrongdoing.  UNUM points to this court's earlier
ruling that it would take "the denial of liability, contained in
paragraph 12 of the RSA, into consideration when evaluating the
probative value of the RSA to the specific claim decision under
review."  Court's Order (doc. #85); see also Broeski v. Provident
Life & Accident Ins. Co., 2007 WL 1704012 at *4 (N.D.Ill. 2007).
In addition, this court has already determined that because the
claim denial here predates the RSA and the Plan of Corrective
Action the probative value may be further limited.  Finally, UNUM
insists that the California Market Conduct Exam is irrelevant to
Baldoni's claim because its scope was limited to violations of

the California Insurance Code and none of the violations addressed were related to the non-statutory abuses Baldoni alleges here.  The court will consider, in turn, the evidence presented by Baldoni to establish undue bias by UNUM.

First, for every case cited by Baldoni as an example of UNUM exerting an abuse of discretion in the claims denial process, UNUM is able to cite a case in which UNUM *did not* impose an abuse of discretion.  Moreover, Baldoni does not offer any evidence, or even argument, linking the decision-making process in the cited cases to the claim practices used here.  Nor does Baldoni offer an explanation for the relevance of the cited cases to UNUM's decision to deny him LTD benefits in this case.  Presumably, Baldoni is asking the court to assume that if UNUM acted improperly in his cited cases, it must have done so in his case. In order for the court to conclude that UNUM acted improperly here based on the cases cited by Baldoni, the court must arbitrarily ignore UNUM's case law supporting the corollary –– that UNUM acted *properly* in denying Baldoni's claim because it has done so in other cases.  Both parties have set forth cases of past performances by UNUM, favorable and unfavorable.  Neither party has made a direct link between the decisions in those cases and UNUM's conduct in this case.  Without more, the court declines to choose between comparable and competing case law.

Next, Baldoni asks the court to consider the RSA as evidence

of UNUM's improper claim denial practices in his case.  With

respect to the relevance of the RSA, this court has previously

determined that:

> [T]his is the type of evidence regarding other claims that
> Abatie v. Alta Life and Health, 458 F.3d 995(9th Cir. 2006),
> holds to be relevant to whether an insurer's denial in a
> specific case was affected by the structural conflict of
> interest that arises when the insurer is both the claims
> administrator and payor of benefits.  Though relevant, the
> court will be taking the denial of liability, contained in
> paragraph 12 of the RSA, into consideration when evaluating
> the probative value of the RSA to the specific claim
> decision under review.  Moreover, because the claim denial
> in this case predates the RSA, and the "Plan of Corrective
> Action" contained therein, it's probative value may be
> further limited in regard to the specific procedures used in
> handling plaintiff's claim.

Court's Order (June 20, 2007).  The court finds that the RSA is

not probative evidence of wrongdoing in this case.  As previously

stated, the events in dispute here predate the RSA, including the

"Plan of Corrective Action."

In addition, the court is persuaded by the reasoning set

forth in Broeski.  The RSA is a settlement agreement, as opposed

to a consent decree or judgment, and does not include an

admission of liability.  See Broeski, 2007 WL 1704012 at *4.

Moreover, using the RSA to establish UNUM's liability here is

contrary to well-established law, supported by important policy

considerations, barring the use of settlement agreements to prove

liability.  Id.  A settlement agreement, negotiated two years

after the denial of Baldoni's claim, and in which UNUM denied any

wrongdoing, is not evidence of malice, self-dealing, or a

parsimonious claims-granting history in this case.

Finally, neither the California Market Conduct Exam nor the Social Security Administration (SSA) decision are relevant here. With respect to the SSA decision, the court previously determined that:

> [T]he ALJ's decision is irrelevant to defendant's structural conflict of interest and whether it affected the specific claim denial under review. The court rejects plaintiff's argument that the ALJ's decision is relevant to show the inferior quality of the consideration underlying defendant's decision. Comparing the consideration underlying the two decisions is of negligible probative value in light of the distinct procedures, presumptions and other standards applicable to each decision.

Court's Order (June 20, 2007). The California Market Conduct Exam is limited to violations of the California Insurance Code. Those violations are not at issue here and, thus, fail to establish that UNUM's structural conflict of interest improperly influenced the decision in Baldoni's case.

In sum, after reviewing all of the extrinsic evidence presented in this case to show UNUM acted improperly with respect to the inherent structural conflict, the court has determined a heightened review of the administrator's decision is not warranted. While the court agrees that an inherent structural conflict of interest exists, there is neither a proven conflict of interest nor evidence of procedural irregularities that would require the court to review UNUM's claim denial less deferentially. The court is satisfied that the inherent

structural conflict of interest did not unduly influence the

decision-making process with regard to Baldoni's LTD benefits
claim.

Baldoni has failed to establish that he is entitled to
deferential review, i.e., greater scrutiny, of UNUM's decision to
deny his LTD benefits claim.  See Abatie, 458 F.3d at 969-970
("[T]he court may consider evidence beyond that contained in the
administrative record that was before the plan administrator, to
determine whether a conflict of interest exists that would affect
the appropriate level of judicial scrutiny.").  There is
insufficient evidence of malice, self-dealing, or a parsimonious
claims-granting history and, therefore, the court will include
only the inherent structural conflict of interest, along with the
other facts and circumstances of the denial, to determine whether
and abuse of discretion occurred here.  See Abatie, 458 F.3d at
968-969.  In so doing the court will consider only the
administrative record to determine whether it was arbitrary and
capricious for UNUM to deny Baldoni's claim.  Id. at 970 ("[T]he
decision on the merits . . . must rest on the administrative
record once the conflict (if any) has been established by
extrinsic evidence or otherwise.").

The Ninth Circuit vacated this court's earlier ruling that
the record as a whole supported the administrator's denial of

Baldoni's claim for LTD benefits and remanded the case for reconsideration in light of the Ninth Circuit's recent *en banc* decision in <u>Abatie</u>, 458 F.3d 955.  <u>See</u> <u>Baldoni</u>, 200 Fed.Appx. 724.  The administrative record and Baldoni's challenges to that record are unchanged.  Indeed, Baldoni raises the same objections that were considered and rejected by the court's earlier decision.  <u>See</u> <u>Baldoni</u>, 2004 WL 2260599.

In that earlier proceeding, as here, Baldoni charged that UNUM's denial of Baldoni's application for LTD benefits was not made in good faith; UNUM failed to have appropriate medical experts review the medical evidence in the record; UNUM failed to seeks additional information to aide in the understanding of Baldoni's impairments; UNUM failed to advise Baldoni of additional information required to perfect his claim; and UNUM impermissibly added requirements to the Policy.  Consequently, in resolving the pending motions, the court incorporates by reference the relevant portions of its earlier Findings and Recommendation (doc. #43, dated October 4, 2004), and again recommends a finding that the record as a whole supports the administrator's decision to deny Baldoni's claim for LTD benefits.

Simply put, the medical evidence submitted by Baldoni did not support restrictions and limitations that would prevent him from performing his job.  UNUM relied on the judgment of

Baldoni's physicians, as well as independent reviews by Thomas
Hashaway, M.D., Shirley Yeager, R.N., and Jeanette Black,
Clinical Consultant, in determining that Baldoni was able to
perform his job duties and therefore not entitled to LTD
benefits.  An examination of the medical records reveals that Dr.
Rosenbloom limited Baldoni as unable to perform physical work.
UNUM insists that Baldoni's occupation as a programmer is
sedentary.  Baldoni's employer, Illinois Tool Works, described
his duties as "computer/programming – write programs for Turret
and Laser."  Administrative Record 002.  When asked to "describe
the demands of [his] job" Baldoni responded:

> I programmed the machines, the turret lathe and laser lathe
> to run parts. I also took it upon myself to help figure out
> what to do with the scrap pieces that were costing so much.
> I would go out on the floor and gather them up. It was
> mostly sedentary.

Administrative Record 0018.  The record is clear that Baldoni's
position as a NC programmer was sedentary or non-physical.
Accordingly, Baldoni would not be precluded from performing the
duties of his job by Dr. Rosenbloom's restriction of "unable to
perform physical work."  Further, while Dr. Belville did opine
that Baldoni's "depression has loomed as a greater and greater
factor," he did not set forth any occupational restrictions or
limitations.

        The record reflects a meaningful dialogue between UNUM and
Baldoni that spanned one year.  During this time Baldoni had many

16 - FINDINGS AND RECOMMENDATION                          [LB]

opportunities to present evidence in support of his allegedly disabling condition, including an opportunity to undergo treadmill testing and leave to supplement the record with a pulmonary function test.  Results from both of those tests likely would have aided the decision-making process by providing relevant information, i.e., functional tests, concerning the extent of Baldoni's limitations.  Baldoni's failure to provide pulmonary function test results, along with his decision to decline Dr. Kremkau's request that he undergo a treadmill test, provide additional support for UNUM's decision to deny his benefits.

For its part, UNUM has provided consistent reasons for its decision to deny benefits; it adequately investigated Baldoni's claim; and, it carefully reviewed the medical evidence that was submitted.  UNUM's conclusion that the medical records and opinions of Baldoni's doctors did not support a finding that he was unable to perform his job was not an abuse of discretion. Nor does the court find any procedural irregularities, evidence of malice or divergence from the policy's plain language that would permit it to find that UNUM had abused its discretion in this case.  See Estate of Shockley v. Alyeska Pipeline Serv. Co., 130 F.3d 403, 405 (9th Cir. 1997)(Under the abuse of discretion standard, an ERISA plan administrator's decision should be upheld if it is based upon a reasonable interpretation of the plan's

terms and was made in good faith.); <u>Taft v. Equitable Life Assur. Soc.</u>, 9 F.3d 1469, 1473 (9th Cir. 1993)("In the ERISA context, even decisions directly contrary to the evidence in the record do not necessarily amount to an abuse of discretion.").

## CONCLUSION

As set forth above, the record as a whole indicates that the administrator did not abuse its discretion in denying Baldoni benefits.  Accordingly, Baldoni's Cross-Motion for Summary Judgment (doc. #92) should be DENIED; UNUM's Cross-Motion for Summary Judgment (doc. #100) should be GRANTED; and Baldoni's Amended Complaint (doc. #7) should be DISMISSED with prejudice.

DATED this  13  day of December, 2007.


     /s/ Donald C. Ashmanskas
         Donald C. Ashmanskas
       United States Magistrate Judge

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due December 31, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the

review of the Findings and Recommendation will go under
advisement on that date.